## Harper License

*Wilson & Salmon*, for appellant.

*John Alan Conte*, for Secretary of Revenue.

SOHN, J., January 18, 1956.—On petition of E. E. Harper, an appeal was allowed from an order by the Secretary of Revenue suspending his operator's

license indefinitely. From the evidence taken at the hearing, we make the following:

### Findings of Fact

1. E. E. Harper has a regularly issued license to operate motor vehicles in the Commonwealth of Pennsylvania.

2. E. E. Harper has operated motor vehicles continuously for more than 40 years.

3. During that period he has driven approximately 600,000 miles.

4. Recently a motorcycle collided with petitioner's vehicle. However, no facts as to this incident appear in the record.

5. Except for the incident referred to in the preceding finding of fact, petitioner, in the 40 years driving, has been involved in only two or three minor incidents, none of which involved damages making it necessary to report any of the incidents.

6. E. E. Harper is, and for the past 35 years has been employed as superintendent of the Colonial Clay Products Company, at Fallston, in this county.

7. Petitioner operates a motor vehicle daily in the performance of the duties of his employment and in traveling to and from his place of employment.

8. In operating a motor vehicle, petitioner has had no difficulty in observing and complying with signs along the highway.

9. Pursuant to direction by the Secretary of Revenue, petitioner appeared in New Brighton, in this county, on October 5, 1955, for the purpose of taking a special examination to determine his fitness to continue as a licensed operator of motor vehicles.

10. The examination consisted of three parts: (1) The law; (2) actual operation of a vehicle; and (3) ability to understand warning or direction signs in the English language.

11. Petitioner passed satisfactorily the examination as to the law and operation of vehicles.

12. The examination as to signs consisted of having petitioner look at 12 signs customarily used on state highways.

13. The signs were the same as those used on the highway except as to size. The signs were viewed through a telebinocular and were about one-half inch square instead of the size customarily posted along the highway.

14. The officer who conducted the examination became impatient with petitioner and insisted that he hurry through it.

15. Petitioner failed to identify and satisfactorily explain some of the signs which were shown to him.

16. Petitioner's failure was the result of his inability to read and the stress resulting from the manner in which the examination was conducted.

17. Petitioner, in the operation of a motor vehicle on the highway, does so in a careful and prudent manner.

18. Petitioner's operation of a motor vehicle on the highway does not constitute a threat to the safety of petitioner or others using the highway.

19. There is no sufficient evidence that petitioner is, for any reason, incompetent or unable to exercise reasonable and ordinary control over a motor vehicle.

20. Petitioner has no physical or mental affliction of any kind, which in any manner affects his ability to properly operate a motor vehicle.

## Discussion

Article VI, sec. 604, of The Vehicle Code of May 1, 1929, P. L. 905, 75 PS §164, as amended, provides in part: "(a) An operator's license or learner's permit shall not be issued to any person under the following conditions:

"8. When unable to understand warning or direction signs in the English language."

The evidence in this case as to the difficulty encountered in the examination comes from defendant. No competent evidence in regard thereto appears in the testimony offered against him. The officer who testified was the Commonwealth's only witness and he did not conduct that part of the examination.

The facts in this case require little discussion. Because the factual situation is practically identical, we incorporate herein the opinion of Mr. Justice Stearne in Commonwealth v. Marsili, 373 Pa. 416. He said:

"This is an appeal by the Commonwealth from an order of the court of common pleas setting aside a suspension by the Secretary of Revenue of an operator's license for operating a motor vehicle. The Commonwealth charges that the defendant is 'unable to read traffic signs in the English language.'

"What we said in *Commonwealth v. Emerick*, 373 Pa. 388, 96 A. 2d 370, relating to legal principles and the construction of The Vehicle Code has similar application to the facts in the present case.

"Section 604(*a*) 8 of The Vehicle Code, May 1, 1929, P. L. 905, as amended, 75 PS 164(*a*) 8, provides that an operator's license shall not be issued to any person 'when unable to understand warning or direction signs in the English language'.

"This is a situation where the effect of the uncontradicted testimony, and the conclusions and inferences to be drawn therefrom, are matters peculiarly within the fact-finding province of the hearing judge. President Judge Lencher said in his memorandum opinion: 'The evidence clearly and without contradiction shows that the defendant has been driving motor vehicles of all kinds since 1920, has never been involved in any accident during all this time, has never

been seen by any one in a violation of any phase of the Motor Vehicle Code, has never been cited, arrested or fined for any such violation. The examining agent of the Revenue Department testified to the defendant's inability to understand certain warning or direction signs printed in English, such as are posted at various points on the public highway. On the other hand, the defendant in open court does recognize and understand some of those writings, and we are persuaded, after looking at the defendant in open *court, carefully noting his response to some of the signs and pictures shown him that with the care and caution of which he is capable when he is at the wheel of an automobile, he takes in every situation, and sufficiently adapts himself to the demands of such situations on the highway.* Many a person with far better formal education than this appellant has, and easily capable of reading, has shown much less capacity for care and caution than characterizes some thirty-two years of an unbroken course of conduct as operator of motor vehicles without mishap on the part of Giovanni Marsili. In view of the uncontradicted testimony of his care, caution, absence of any mishap while at the wheel of automobiles, we ought not to rely on testimony that is no more than opinion evidence. The proof of the pudding is in the eating. This appellant has driven carefully when he has not been able at first to read certain words, has stopped longer than drivers usually do at crossings, has looked with more care and caution than drivers usually exercise on the highways. Because of his possible inability to read some of the words, he has compensation for such inability by extra care and caution which have made him a careful and competent driver.

" 'So that there be no mistake about it, we have determined from facts of record that this appellant has not been involved in any accident, that his eyes

and ears are in excellent condition, that he has no mental affliction of any kind, that he is capable and competent in the operation of a motor vehicle, that his license so to do should not be suspended simply because now—long after he started to drive a motor vehicle—he cannot read as well as he should.' (Italics supplied.)

"In the above circumstances the learned court below did not abuse its discretion when it revoked the Secretary of Revenue's order of suspension of defendant's license. The order is affirmed."

The ability to understand all traffic signs is not necessarily a proper test of competence: Bahry License, 1 D. & C. 2d 277, 283. Petitioner is aware of his difficulty. Because of it he is especially attentive to highway situations and conditions. That he does operate a vehicle in a careful and prudent manner is established by his testimony and by witnesses who have traveled many miles with him. These witnesses testified at the hearing. From all the evidence we conclude that petitioner exercises more care than persons usually do in the operation of a motor vehicle.

His understanding of warning or direction signs in the English language is adequate to enable him to operate a motor vehicle with due care. He does so operate a motor vehicle.

### Conclusions of Law

1. The operator's privilege of E. E. Harper should not be suspended.

### Order

And now, to wit, January 18, 1956, for the reasons stated in the foregoing opinion, it is ordered, adjudged and decreed that the appeal of E. E. Harper be sustained, and the order of the Secretary of Revenue suspending his operator's license indefinitely be, and it is hereby reversed. Costs to be paid by petitioner.